Leda Mae **SYMONS** et al., Plaintiffs-Appellees,

v.

**MUELLER COMPANY,** Defendant-Appellant.

No. 73-1425.

United States Court of Appeals, Tenth Circuit.

Submitted Jan. 7, 1974.

Decided Jan. 22, 1974.

Rehearing Denied Feb. 28, 1974.

Jerry M. Ward, of Hampton & Ward, Great Bend, Kan., for defendant-appellant.

Gilbert G. Lundstrom, of Woods, Aitken, Smith, Greer, Overcash & Spangler, Lincoln, Neb. (Patrick F. Kelly, of Render, Kamas & Kelly, Wichita, Kan., on the brief), for plaintiffs-appellees.

Before HILL, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is an action growing out of a fire and explosion resulting from a gas leakage which occurred at the home of George A. Schields on March 22, 1969.

The action was first filed in state court against Mueller Company and the Liberal Gas Company, but following a dismissal as to Liberal Gas Company,

the action was removed to the United States District Court for the District of Kansas where it was tried to a jury on December 27, 1971, and verdicts covering all of the damages suffered were returned in favor of the plaintiffs. Subsequently, motions for new trial and for judgment notwithstanding the verdicts were filed and were overruled by the trial court.

Defendant-appellant Mueller Company is the manufacturer of a service valve which is designed to connect the gas main to the service lines running to the home or other outlet of the user. Some time prior to the incident in question the gas company had replaced a gas main on the street adjacent to the plaintiff's home. In the course of installing the new main, six or seven service valve tees manufactured by Mueller Company were installed. According to the testimony of the Liberal Gas Company the service valve tees were tested at the time of installation, and at that time they held the required pressure. Subsequently, about a year after the installation, October 1968, a routine inspection was conducted and no leaking gas was detected. This was approximately six months prior to the date of the explosion. Following the explosion a further inspection was made and the presence of natural gas was detected. Subsequent to this it was found that the service valve tee was leaking at the point where it connects with the service line to the plaintiff's home. On examination it was discovered that the service valve tee, the equipment in question here, had a damaged thread at the end where the service line connection was made.

The plaintiffs' theory, supported by expert testimony, was that the threads had been damaged in the course of manufacture. Plaintiffs' expert testified that a torn second thread, a deformed first thread and a burred thread, all of which occurred during the manufacture, resulted in the joint connection failing to tighten properly under normal torque pressure and, as a consequence, gas was able to leak from this joint. Plaintiffs'

further theory was that the gas which leaked moved laterally underground through loose dirt to the plaintiff's house, that the ingredient which produced the odor dissipated and that the concentrations of gas produced the explosion.

The defendant's testimony was that the defect in the service tee valve, if any, was caused by faulty installation. In fact, defendant's testimony was that the condition of the threads would not prevent the tightening of the tee valve. Another theory of Mueller is that it had a right to anticipate that the gas company in installing the valve would notice any defect which was present and reject the valve or install it so that it would not leak gas.

The principal issue in the case is whether the trial court erred in submitting to the jury the theory of strict liability, it being the defendant-appellant Mueller's contention that Kansas law required the cause to be tried on a negligence basis. Mueller contends that the court erred in refusing to grant its motion for a directed verdict and for judgment notwithstanding the verdict. *First,* because of the lack of evidence to support plaintiffs' theory that the explosion was caused by gas leaking from the service valve tee. *Second,* that the trial court erred in failing to determine that the acts or omissions of the gas company were the sole cause of the plaintiffs' injuries and damages since the gas company had installed the valve and maintained and inspected it, and thus, if the valve caused the damage, responsibility for its failure was on the gas company and not Mueller. *Third,* appellant contends that Kansas has not adopted the strict liability doctrine upon which the case was tried and it was therefore error to submit the cause to the jury on this theory. It is also contended that the giving of a covenant not to sue Liberal Gas Company and Hartford Accident and Indemnity Company, its insurer, constituted a release of a joint tortfeasor which resulted in the release of Mueller. Still another contention of

Mueller is that the court erred in allowing counsel for plaintiffs to mention the pending action for indemnity by Mueller against Liberal Gas.

The court instructed the jury that plaintiffs were relying on the theory of liability known as implied warranty or strict liability, which theory arises by operation of law and as a result of public policy which seeks to protect the buying public from inherently injurious or dangerous products which are defective. The court continued that the basis for this doctrine was that the manufacturer undertakes special responsibility toward members of the public who may be injured by the product. The court further stated that Mueller Company could be held liable only if the jury found from a preponderance of the evidence that 1) it was engaged in the manufacture of the service valve tee; 2) it was in a defective condition when it left control of Mueller Company; 3) the service valve tee was expected to reach and did reach the Liberal Gas Company in the condition in which it was sold; 4) the particular service valve tee was defective and was unreasonably dangerous to the plaintiffs on their property; 5) the service valve tee was the proximate cause of the explosion which· produced the damages. The jury was also told that the fact that the Liberal Gas Company may have contributed to the cause of the explosion was not to be considered by the jury. If the defect in the service valve tee was also a proximate cause of the explosion and the subsequent injuries, the court explained that there could be more than one proximate cause. Mueller challenges the submission of this theory to the jury and contends, as we have explained above, that the submission was not justifiable under the law of Kansas.

## I.

### SUFFICIENCY OF THE EVIDENCE

The defendant argues that the evidence at trial was insufficient, whereby a motion for dismissal or directed verdict should have been granted. It is true that there was not evidence presented to establish that the main or the service line was leaking prior to the date of the explosion, but this does not constitute a deficiency in the proof. There was testimony that the service valve tee was leaking at the time of its inspection. Although the inspection was 60 days after the explosion, there is nevertheless a natural inference that since there was a gas explosion obviously caused from leakage, and since the leak at the service valve tee is the only leak which could account for the explosion, that this was the cause. Such deduction is logical and thus sufficient.

The question whether the service valve tee was defective when it was released by defendant-appellant is a more difficult question, but here again there was expert testimony that the defective threads caused the leak. The trial court had had some concern about this question prior to the presentation of the expert testimony of the witness Young. However, judging from the court's order denying the post-trial motions, it would appear that it had no doubt concerning the adequacy of the evidence to support the judgment. We refer to the following comments:

. . . Resolution of defendant's liability in this case required the jury to determine basically three issues: (1) whether the explosion was caused by a leak in the gas line; (2) whether a defect in the service tee was the cause of the gas leak; and (3) whether the service tee was defective when it left defendant's plant. None of these complex, technical issues was wholly susceptible of direct proof. Consequently, both sides were forced to place primary reliance on the testimony of expert witnesses. Plaintiffs' experts established that the service tee was defective when it left defendant's plant, that the defect caused a leakage of gas, and that the leak caused the explosion. Defendant's experts, true to form, disputed nearly all the testimony of plaintiffs' experts. This being the case, a directed verdict or a judgment notwithstanding the

verdict would clearly be erroneous . . .

## II.

### APPELLANT'S MOTION FOR JUDGMENT N.O.V.

■ Little remains to be said on the judge's denial of appellant's motion for judgment n. o. v., which asserts that there was insubstantial evidence upon which a jury could have based a verdict for the plaintiffs, and that the verdict was founded on speculation and conjecture rather than upon reasonable and permissible inferences from basic facts.

Judgment n. o. v. (or directed verdict) under Rule 50, F.R.C.P. is appropriate in very limited circumstances. Such a motion calls for a decision withdrawing a case from jury consideration, or overruling a jury determination already made. Such an action is appropriate only when " . . . the evidence and all the inferences to be drawn therefrom are so patent that minds of reasonable men could not differ as to the conclusions to be drawn therefrom." Taylor v. National Trailer Convoy, Inc., 433 F.2d 569, 571 (10th Cir. 1970) and cases cited. All such evidence and inferences evaluated in this regard must be construed in the light most favorable to the party against whom the motion is directed. Wilkins v. Hogan, 425 F.2d 1022, 1024 (10th Cir. 1970). A scintilla of evidence is insufficient, of course, to justify submission of a case to the jury. Nevertheless, a directed verdict or judgment n. o. v. may not be granted unless the evidence points but one way and is susceptible to no reasonable inferences which may sustain the position of the party against whom the motion is made. Swearngin v. Sears Roebuck & Co., 376 F.2d 637, 639 (10th Cir. 1967).

## III.

### APPELLANT'S THEORY OF SUPERSEDING FAULT

■ It is impossible for us to conclude, in accordance with appellant's assertion, that the failure of the gas company to remedy the defect at the time of installation superseded as a matter of law the liability of the Mueller Company. As the trial court ruled, the fact that the gas company may have been at fault did not excuse the defendant-appellant here. The instruction of the court was that if the defect was a manufacturer's defect, it did not matter that the gas company was also at fault in failing to detect the defect when installing the gas line. The mere fact that two tortfeasors were both at fault does not serve to relieve one or the other. The Restatement of Torts Second § 402A, comment $p$ states that the question is essentially one of whether responsibility for discovery and prevention of the dangerous defect is shifted to the intermediate party who is to make the changes. The section also declares that there will be some situations and some defects in which the responsibility will be shifted.

Subsection $q$ says that where there is no change in the component part itself, but it is merely incorporated in something larger, the strict liability carries through (from the manufacturer) to the ultimate user or consumer. Because, however, of the dearth of judicial authority on the subject, the A.L.I. refrains from expressing an opinion. It declares that this is its expectation. Yet this is the rational conclusion where the part is merely attached as in the case at bar.

## IV.

### WHETHER IT IS CONSISTENT WITH KANSAS LAW TO APPLY RESTATEMENT OF TORTS SECOND § 402A

The Kansas cases have not had occasion to apply the doctrine of strict liability to products such as that at bar even though it is a product which, under plaintiffs' doctrine, is defective and arguably unreasonably dangerous to the user or consumer. It has, however, applied what amounts to strict liability in cases, for example, involving sales of

food. *See* Swengel v. F. & E. Wholesale Grocery Co., 147 Kan. 555, 77 P.2d 930 (1938); Simmons v. Wichita Coca-Cola Bottling Co., 181 Kan. 35, 309 P.2d 633 (1957); also to defective hair preparation, Graham v. Bottenfields, Inc., 176 Kan. 68, 269 P.2d 413 (1954). This court has heretofore held that strict liability under Kansas law applies to products such as gloves and tires. *See* Ray v. J. C. Penney Co., 274 F.2d 519 (10th Cir. 1954); B. F. Goodrich v. Hammond, 269 F.2d 501 (10th Cir. 1959). The Kansas Supreme Court has not repudiated this court's decisions projecting the Kansas law to defective products other than food and products which post a particular hazard to the person due to their proximity.

■ The fact that the Supreme Court of Kansas has not designated this type of action strict liability but refers to it as breach of warranty does not, in our view, furnish a basis for a distinction. The Kansas court has thus treated warranty in the same manner as strict liability. It is, however, a tort since privity is held to be unnecessary.

As was said by this court in B. F. Goodrich v. Hammond, *supra,* the implied warranty is imposed by the law on the basis of public policy.

■ From the evidences presented we are unable to conclude that Kansas would not follow the substance of § 402A, comment q, under these circumstances. Defendant-appellant cites no cases which would tend to indicate that Kansas does not recognize the doctrine of strict liability under circumstances similar to those at bar. Most of the space in the defendant's brief does not grapple with this. It is devoted to efforts on its part to prosecute the gas company to show that it was the sole culprit. These efforts fall short of exonerating appellant.

■ We have on numerous occasions recognized that the federal district judge sitting within the particular state whose law is in question is presumed to be correct. Stephens Industries, Inc. v. Haskins and Sells, 438 F.2d 357 (10th Cir. 1971); Nevin v. Hoffman, 431 F.2d 43 (10th Cir. 1970). *Cf.* Bernhardt v. Polygraphic Co., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956); MacGregor v. State Mutual Life Assur. Co., 315 U. S. 280, 62 S.Ct. 607, 86 L.Ed. 846 (1942).[1]

Kansas law on the subject was carefully considered by the trial court in reaching its conclusion that the Kansas Supreme Court would follow strict liability theory in the present circumstances.[2]

---

1. Absent pinpoint state law, as here, the district judge sitting as a state trial judge in a diversity case properly looks to all evidences. Guaranty Trust Co. v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945); Cottonwood Mall Shopping Center v. Utah Power and Light Co., 440 F.2d 36 (10th Cir. 1971).

2. This is evidenced by the court's remarks in commenting on the instructions to the jury pertaining to strict liability or implied warranty:

   THE COURT: The Court, responding to the objections by the defendants' counsel to the Court's instructions, or the failure to give requested instructions, I think the record probably reflects, from the reporter's notation of the Court's remarks concerning previous Motions made in the case or discussions by counsel and the Court as to what the Court's opinion is, but to state it, restate it briefly, the Court be-

lieves that the Doctrine of Implied Warranty or strict Liability is a viable and existing legal doctrine in Kansas, and that the facts in this case fit within that Doctrine. That while the Kansas Supreme Court may not have specifically in this case had a factual situation like this before it the Court believes that they would and will eventually consider such a case and certainly the statutory Sections as given in this Court's instructions, I believe 11 and 12, encompass and go further specifically in Statutory language than the Supreme Court at the present time does. But, in the light of all existing law the cases in Kansas by our Supreme Court by our Statutory law and by the general, by the best authorities on the law in the country generally, the Court thinks that this is a logical and basic case where the doctrine of Strict Liability should be applied. And in that regard I would overrule the objections of the defendant.

■ The trial court also correctly determined and instructed on the cause issue. The trial court's charge to the jury clearly expounded that proof of proximate cause was essential under § 402A. The court's charge also said that if there existed concurrent clauses, both parties contributing to the injury would be concurrently responsible. The court also said that if the conduct of one of the defendants was the sole proximate cause this individual alone would be liable. These statements were in accord with § 402A of Restatement of Torts Second.

## V.

### THE QUESTIONS PERTAINING TO THE LOAN RECEIPTS

■ Plaintiff, Leda Mae Symons, entered into an arrangement called a loan receipt and agreement. She received the sum of $85,000 from Liberal Gas Company. In connection with this, on the same day, September 14, 1970, she gave to Liberal a covenant not to sue and received for this the sum of $5,000. George Schields executed similar agreements with Liberal on September 11, 1970 and received $9,354.59 in connection with the loan receipt and agreement and $1,000 for giving Liberal a covenant not to sue. Mueller sought a court construction of all these agreements, contending that they constituted a release of Liberal and, therefore, the release of Mueller as well. However, the trial court refused to give such a ruling. This refusal was part of the denial of the motion for summary judgment of Mueller. The refusal of the trial court to construe the agreement is and was understandable, for if Mueller had prevailed on the merits it would have rendered the instant question moot and it would have rendered moot also the question of whether Mueller was entitled to credit for the amounts that Liberal paid the plaintiffs. The deferring of this decision is also understandable because of the issue as to whether the parties were in fact joint tortfeasors—a question dependent on the facts.

At present there is pending in United States District Court in Kansas the third-party action instituted by Mueller. It would seem, therefore, that there is no longer any reason for postponing the construction of this loan receipt and agreement. Mueller is entitled to know, for example, whether the agreements constitute a release and whether the entire amounts paid were in truth loans or were given in exchange for the covenants not to sue. *Cf.* Cullen v. A., T., & S. F. R. Co., 211 Kan. 368, 507 P.2d 253 (Kan. 1973).

In view of the questions which surround the execution of these agreements, we are of the opinion that the trial court should determine these issues before proceeding with the third-party action. It should, of course, be done without delay in fairness to the plaintiffs-appellees in this case.

Rather than simply affirming the judgments, we deem it necessary to give the trial court authority to treat the matter we now discuss. The cause will, therefore, be remanded to the trial court so as to authorize that court to rule on the questions raised by the loan receipts and agreements together with the covenants not to sue.

■ A final appellant contention is that the trial court erred in refusing to grant a mistrial after counsel for plaintiff in closing argument improperly referred to defendant's pending indemnity action against Liberal Gas Co. From a review of the record, we conclude that counsel's arguments, although perhaps improper, did not constitute reversible error. They were made in response to defendant's counsel's comments to the jury that the plaintiffs "have sued the wrong party" and should "proceed against the proper defendant, the Liberal Gas Co." In this context, the trial judge was acting within the proper scope of his discretion in considering the

closing remarks of counsel for plaintiff as not being prejudicial.

The judgments are affirmed, but for the reasons stated the cause is remanded to the trial court for further proceedings.