EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

UNIVERSITY OF OKLAHOMA,
Defendant.

No. CIV 81–462–R.

United States District Court,
W.D. Oklahoma.

Dec. 17, 1982.

Leroy Clark and J.N. Finney, E.E.O.C., Washington, D.C., Robert M. Jones, Regional Atty., James F. Gruben, Caruthers G. Berger, Dallas Dist. Office, Richard J. Deaguero and Gabriel H. Robles, Senior Trial Atty., Dallas, Tex., for plaintiff.

Susan Gail Seamans, Stanley M. Ward, Kurt F. Ockershauser, Legal Counsel, The University of Oklahoma, Norman, Okl., Melvin F. Pierce, Pierce, Couch, Hendrickson, Johnston & Baysinger, Oklahoma City, Okl., for defendant.

### ORDER

DAVID L. RUSSELL, District Judge.

The Defendant, University of Oklahoma has filed a Motion for Judgment Notwithstanding the Verdict and in the alternative Motion for New Trial. Plaintiff filed a brief in opposition thereto and both parties have subsequently submitted several supplemental briefs. In addition, a hearing was held on the motion on August 20, 1982.

This was an action brought by the Equal Employment Opportunity Commission (EEOC) on behalf of an individual, Marion E. Clark, alleging violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. Two causes of action were set out in the Complaint. The first was an allegation that Marion E. Clark had not been promoted to the position of Chief Cartographic Draftsperson in the Cartographic Section of the Oklahoma Geological Survey because of her age. The second was a charge that the Defendant retaliated against Marion E. Clark because she opposed the alleged age discrimination.

The jury returned affirmative answers to the three interrogatories submitted to it by the Court indicating that Ms. Clark was discriminated against by the Defendant because of her age and that such discrimination was wilful, and that Ms. Clark was retaliated against by the Defendant because she opposed the age discrimination. The parties agreed that the Court would determine the appropriate measure and amount of damages at a later time.

It is noted that Defendant's motion is directed only towards the age discrimination case and thus the verdict on the retaliation claim remains intact.

■ The Courts in the Tenth Circuit have established that a Motion for Judgment Notwithstanding the Verdict and a Motion for New Trial are controlled by the same standards by which the prerequisite motion for directed verdict is judged. *Barnett v. Life Insurance Co. of Southwest,* 562 F.2d 15 (10th Cir.1977).

In ruling on a Motion for Judgment Notwithstanding the Verdict and Motion for New Trial the Court must view the evidence and the inferences therefrom in the light most favorable to the party for whom the jury found. *Smith Machinery Co. v. Jenkins,* 654 F.2d 693 (10th Cir.1981); *Ford Motor Credit Co. v. Milburn,* 615 F.2d 892 (10th Cir.1980). The Tenth Circuit noted in *Joyce v. Atlantic Richfield Co.,* 651 F.2d 676 (10th Cir.1981) that in making this determination the Court cannot weigh the evidence, consider the credibility of witnesses or substitute its judgment for that of the jury.

However, it is recognized that a mere scintilla of evidence is insufficient to justify the denial of the motion. *Symons v. Mueller Co.,* 493 F.2d 972 (10th Cir.1974).

With these standards in mind, the Court summarizes the evidence presented at trial as follows:

Marion E. Clark, age 62, was originally hired by the University of Oklahoma in 1957 as a draftsperson in the Geological Survey and subsequently became a Cartographic Draftsperson. In July 1979 she assumed the title of Cartographic Technician II. In January, 1979 a vacancy in the position of Chief Cartographic Draftsperson was announced by the University. Ms. Clark, who was 59 years of age at that time, submitted an application for this position to Dr. Charles Mankin, Director of the Survey since 1967. The vacancy had been created in the fall of 1978 when Roy Davis, age 54, the incumbent Chief Cartographic Draftsperson was asked to step down by the University.

It was not disputed that Ms. Clark had at least the minimum qualifications required for the position, the most significant being over twenty-one years of experience with the Survey involving essentially all facets of map and illustration preparation and production. Several strong letters of recommendation accompanied Ms. Clark's application.

In May 1979 Ms. Clark was informed that she had not been selected for the position of Chief Cartographic Draftsperson and that the University had hired Mr. T. Wayne Furr, age 36, from the United States Geological Survey in Denver, Colorado to fill the position. Marion E. Clark testified that Dr. Mankin had spoken to her about her retirement and she felt sure he did not want to hire her for the vacant position.

As previously stated the verdict in favor of the Plaintiff with respect to the retaliation claim is not in controversy here and thus it is not necessary to set out the evidence presented at trial concerning retaliation.

It was stipulated by the parties that Plaintiff had met its burden of establishing the elements of a prima facie case of age discrimination by proving that (1) Marion E. Clark is in the protected age class between the ages of 40 and 70 years of age; (2) she applied for and was qualified for the job of Chief Cartographic Draftsperson for which the University of Oklahoma was seeking applicants; and (3) despite her qualifications, she was rejected and a person not within the protected age class was selected for the job.

The Defendant then presented testimony in an effort to articulate a legitimate, non-discriminatory reason for not promoting Ms. Clark to the position for which she applied. See, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Dr. Mankin testified that there were productivity problems in the Cartographic Section and that he had discussed his concerns with Roy Davis who was the head of the section in 1978. Mr. Davis was asked to step down and he offered to resign as Chief Cartographic Draftsperson and to continue working as a cartographic draftsperson in the section. It appeared that the University had two options for filling the vacated position. It could internally promote someone from within the section or it could advertise and conduct a national search. Because of the thought that "new blood" in the management of the section might be of value in increasing productivity, the Defendant chose to advertise for applicants from within the section as well as from the open job market. A nineteen person search and selection committee was formed consisting of members of the Section and others, with Dr. Mankin as the chairperson. Testimony revealed that eleven of nineteen committee members were forty years of age or older. Originally four candidates for the position were reviewed, one of whom was later eliminated from consideration.

On April 17, 1979 several meetings were held to discuss the three candidates and to cast secret ballots using a preferential pairing procedure. Each member of the committee was asked to vote on three pairings of the applicants. The tally was as follows: Furr v. Dillon—6 to 6; Clark v. Dillon—4 to 9; Clark v. Furr—5 to 12. The discrepancy in total votes was explained by the fact that some members abstained from voting on every pair and Dr. Mankin did not vote. After it was determined that Mr. T. Wayne Furr would accept the job, he was an-

nounced as the choice of the committee and Marion Clark was advised that she had not been selected.

Dr. Mankin states that age was never discussed in the selection committee meetings.

Numerous witnesses who were members of the search committee testified for Plaintiff and Defendant. Each stated that age discrimination was not a factor in his or her vote.

A member of the selection committee and the Geological Survey, Mr. Thomas Amsden, age 67, testified he voted for Mr. Furr because he thought Furr was best qualified and that age was not a factor in his vote.

Kelly Hilburn also a member of the committee and the Geological Survey testified as one of Plaintiff's rebuttal witnesses and stated that he voted for Mr. Furr because he was aware of conflicts between Ms. Clark and Dr. Mankin which could cause problems if Ms. Clark was in a supervisory position. He stated that age was not a factor in his vote. Plaintiff's witness, Mary Ellen Kanak, an employee of the Cartographic Section and a member of the selection committee testified that although she thought Ms. Clark was qualified and was very productive, she voted for Mr. Furr because she thought Dr. Mankin and Ms. Clark could not have a good working relationship and also because she believed that someone from outside the section might be more effective in management. Further Ms. Kanak testified that age was never mentioned in the committee meetings and it was not a factor in her vote.

Dr. Kenneth Johnson who has been in the Survey since 1962 and has been Associate Director of the Oklahoma Geological Survey since 1978 testified that he recommended a national search to fill the position. He was aware of difficulties between Roy Davis and Ms. Clark and felt that a new supervisor from outside the section would be best to deal with the leadership and productivity problems in the section. He stated that although Ms. Clark's work was good, he had reservations about her ability to fill the position of Chief Cartographic Draftsperson because of a deficiency in managerial skills. Again, the witness maintained that Marion Clark's age was not a factor which was considered in reviewing her as a candidate.

Since the establishment of a prima facie case by the Plaintiff is undisputed the only issue the Court must address is whether there was sufficient evidence for a jury to find that the Defendant's proffered reason for not promoting Ms. Clark was pretextual.

Although discriminatory motivation may be proven by direct or indirect evidence at trial it may be difficult to do so. Thus, a scheme of proof has been judicially created which features a rebuttable factual presumption favoring the Plaintiff in the initial stage of trial. *McDonnell Douglas Corp., supra.* This scheme has been adopted in ADEA actions. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1980); *Smith v. Flax,* 618 F.2d 1062 (4th Cir.1980). An analysis of the shifting burdens in this scheme is necessary at the outset. In this regard this Court is assisted by the well-reasoned opinion from the Fourth Circuit in *Lovelace v. Sherwin-Williams Co.,* 681 F.2d 230 (4th Cir.1982).

Here the Plaintiff introduced evidence to prove a prima facie case of age discrimination and in fact the parties stipulated to the establishment of the elements.

■ The effect of this prima facie case is that a rebuttable factual presumption arises which is an inference that the aggrieved person has been discriminated against by Defendant because of her age. If not rebutted by Defendant the prima facie case is enough to require submission of the motivational question to the jury. *Texas Department of Community Affairs v. Burdine, supra.*

■ In the next stage of the scheme of proof the burden is on the Defendant to produce evidence that Marion E. Clark was not promoted because of a legitimate, non-discriminatory reason. This burden may be met by the introduction of admissible evi-

dence of an explanation that would be legally sufficient to justify a judgment for the Defendant. *Burdine,* 450 U.S. at 254–255, 256–257, 101 S.Ct. at 1094–95, 1096. If the Defendant rebuts the presumption of age discrimination by articulating a nondiscriminatory reason, the mandatory inference is destroyed. *Burdine,* at 255 n. 10, 101 S.Ct. at 1095 n. 10.

■ This "destruction" has two critical procedural consequences. First, it precludes, at this stage of the evidence a directed verdict. Second, it recasts the dispositive motivational issue at "a new level of specificity." *Burdine,* at 255, 101 S.Ct. at 1094.

After the second phase of the proof scheme the burden of production is once again on the Plaintiff, along with the ultimate burden of persuasion which has never shifted. The Plaintiff is given the opportunity to present evidence that the reason offered by Defendant is "pretextual" or "not the true reason." *Burdine* at p. 256, 101 S.Ct. at 1095. This may take the form of new evidence designed directly to attack the credibility of Defendant's specific explanation or simply to prove that, as against that specific reason, age is the more likely explanation. *Burdine* at p. 256, 101 S.Ct. at 1095. Because destruction of the original presumption does not destroy the inherent probative force of evidence earlier introduced by the Plaintiff in its prima facie case which invoked the presumption, that evidence, along with evidence elicited by Plaintiff in cross-examination and in rebuttal, may be considered in determining whether Plaintiff has met its ultimate burden. *Lovelace,* at 240. See *Burdine* at 255 n. 10, 101 S.Ct. at 1095 n. 10.

■ The effect of meeting this ultimate burden is to require submission of the question of discriminatory motive to the jury. The effect of a failure to carry the burden is to compel dismissal of the claim upon a motion for directed verdict or judgment notwithstanding the verdict. If this ultimate burden is not carried the Defendant's motion should be granted, even though the Plaintiff's original burden of production

was carried by force of presumption. In note 12, p. 241, the Court in *Lovelace, supra* stated that the contention that once the prima facie case has originally been established, the case must of necessity be submitted to the jury is wrong, citing *Houser v. Sears, Roebuck & Co.,* 627 F.2d 756 (5th Cir.1980).

■ There is no doubt that the Defendant carried the relatively modest burden of introducing admissible evidence of a legitimate nondiscriminatory reason that is legally sufficient to justify a judgment for the Defendant. *Burdine,* 450 U.S. at 254–255, 101 S.Ct. at 1094–95. The University of Oklahoma proffered Ms. Clark's lack of management experience, and her productivity problem as reasons for not internally promoting her to the position of Chief Cartographic Draftsperson. In lieu thereof they carried out a nationwide search and established a 19 person selection committee. The committee met individually with each applicant including the Plaintiff. Eventually the committee met and voted. Mr. Furr was the ultimate choice. When questioned about the reasons for their votes, persons on the Search and Selection Committee stated that they believed the difficulties with productivity within the section would best be eliminated by a new manager from outside the department. Although none of the members of the Committee expressed adverse opinions with respect to Ms. Clark's work, they uniformly testified that Ms. Clark did not have a good working relationship with Dr. Mankin or with Roy Davis in the department and that they believed this might cause problems if Ms. Clark were promoted to supervisor of the department. In addition the committee members who testified at trial all stated that age was not a consideration in their determination.

At this stage of the assessment of the evidence the probative force of the presumption invoked by the prima facie case is dispelled. *See, Lovelace* at 244. The Plaintiff presented evidence attempting to show that Defendant's reasons for not promoting Ms. Clark were pretextual. Plaintiff intro-

duced testimony concerning the personal conflict between Dr. Mankin and Marion Clark and attempted to present a scenario wherein Dr. Mankin intentionally manipulated the procedures used to search for candidates to fill the position and further manipulated the committee members so they would not vote for Ms. Clark.

When confronted with the Defendant's reasons and Plaintiff's alleged theory of age discrimination, the decisive question is whether age discrimination was a determining factor in the Defendant's decision not to promote Ms. Clark.

The Court is satisfied that there was no evidence whatsoever that the Defendant's decision was based on age discrimination. The Plaintiff's case relied on the rebuttable presumption that age discrimination was the motive for Defendant's failure to promote Ms. Clark, and other circumstantial evidence that the Defendant's proffered reasons were pretextual. Despite the fact that Plaintiff introduced inferential evidence supporting some murky theories that Defendant's articulated reasons were not true, there was no evidence tending to demonstrate that age discrimination was the reason Ms. Clark was not promoted. Defendant's explanations were unrefuted.

The undisputed evidence was that problems existed in the cartography section—problems with productivity as well as personality problems among several of the members of the section, including Ms. Clark. However, to infer from those circumstances a deliberate scheme or extended plot having as its objective the Defendant's refusal to promote Ms. Clark because of her age is rank speculation. After careful examination of the evidence in this case, the Court concludes that the Plaintiff failed to meet its ultimate burden of proof concerning the articulated nondiscriminatory reasons for not promoting Ms. Clark. Plaintiff did not show that these reasons were pretextual and the evidence when viewed as a whole cannot support a finding of age discrimination. See, *Houser v. Sears, Roebuck & Co.*, 627 F.2d 756 (5th Cir.1980); *Douglas v. Anderson*, 656 F.2d 528 (9th Cir.1981).

Accordingly the Defendant's Motion for Judgment Notwithstanding the Verdict is hereby granted and judgment is entered in favor of the Defendant on the age discrimination cause of action.

IT IS SO ORDERED.