**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant, Cross-Appellee,**

v.

**UNIVERSITY OF OKLAHOMA, Defendant-Appellee, Cross-Appellant.**

**Nos. 84–1475, 84–1571.**

United States Court of Appeals, Tenth Circuit.

Oct. 2, 1985.

Warren Bo Duplinsky, Atty. (Johnny J. Butler, Gen. Counsel, Philip B. Sklover, Associate Gen. Counsel, and Susan Buckingham Reilly, Atty., with him on briefs), E.E.O.C., Washington, D.C., for plaintiff-appellant, cross-appellee.

Susan Gail Seamans, The University of Okl., Norman, Okl. (Stanley M. Ward and Kurt F. Ockershauser, The University of Okl., Norman, Okl., and Melvin F. Pierce, Oklahoma City, Okl., with her on brief), for defendant-appellee, cross-appellant.

Before MOORE, and SETH, Circuit Judges, and MATSCH, District Judge.[*]

JOHN P. MOORE, Circuit Judge.

This is an appeal in an age discrimination case filed by the Equal Employment Opportunity Commission (EEOC) on behalf of Marion E. Clark against the University of Oklahoma (OU). The EEOC appeals from an order granting OU's motion for judgment notwithstanding the verdict (j.n.o.v.) on the finding of age discrimination. In a cross appeal, OU seeks to set aside a verdict that OU retaliated against Clark because she had filed an age discrimination complaint with the EEOC. The questions presented are whether the evidence justifies the interference with the verdict and whether the jury was improperly influenced by conduct of counsel in arriving at its verdict on retaliation. We conclude the verdict was improperly set aside and that the record does not support the claim of improper conduct. We therefore reverse in part and affirm in part.

Marion Clark, age 59 when this action was filed, is a cartographer in the Cartography Section (the section) of the Oklahoma Geological Survey (OGS or the Survey), a

---

[*] Honorable Richard P. Matsch, United States District Judge for the District of Colorado, sitting by designation.

department of OU. Dr. Charles Mankin is the director of the OGS. Roy Davis, who was age 54 at the time of the subject events, was the head of the section. An undercurrent of rancor and animosity among Davis, Mankin, and Clark eventually precipitated the resignation of Davis as section chief, although he stayed on with the section as senior cartographer.

A search for a new chief was announced. Clark, who had worked in the section since 1957, was the only internal applicant[1] for the promotion. Departing from the usual OU practice, Mankin advertised the position nationally and attracted several applications. The final choice was narrowed to Marion Clark, T. Wayne Furr (then age 36), and Richard Dillon (then age 43). After interviews and discussions in which a search committee actively participated, Mankin distributed a series of secret ballots[2] pairing the three final candidates to determine the preferred candidate. Furr received the most votes.

The parties stipulated to a prima facie case under the Age Discrimination in Employment Act (ADEA): that Marion Clark applied for an available position for which she was qualified, but was rejected under circumstances which gave rise to an inference of unlawful discrimination. Evidence of OU's legitimate, nondiscriminatory objectives in its employment decision was received, to which the EEOC offered testimony to show that the proffered reasons were pretextual. The jury also heard conflicting testimony related to OU's alleged retaliation against Clark.

In granting OU's motion for j.n.o.v., 554 F.Supp. 735, the district court reviewed the conflicting evidence within a scheme of proof set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and concluded it was "satisfied that there

was no evidence whatsoever that the defendant's decision was based on age discrimination." The court rejected as "murky theories" the inferences that the jury drew from the EEOC's circumstantial evidence, finding instead that the evidence viewed as a whole could not support a finding of age discrimination.

The EEOC contends that the trial court reweighed the evidence and substituted its determination of credibility for that of the jury, thus erroneously granting j.n.o.v. in favor of OU. OU cross appeals the finding of retaliation, which was not raised in the motion for j.n.o.v., and argues that the jury was improperly confused and prejudiced by the EEOC.

## I. *Judgment Notwithstanding the Verdict*

In *EEOC v. Prudential Federal Savings & Loan Assn.,* 763 F.2d 1166 (10th Cir.1985), we reiterated the standard for granting of j.n.o.v. Only when "the evidence points but one way and is susceptible to no reasonable inferences which may sustain the position of the party against whom the motion is made" is j.n.o.v. appropriate. *Id.* at 1171 (citation omitted). "The question in each instance is not whether there is no evidence supporting the party against whom the motion is made, but whether there is evidence upon which the jury could probably find a verdict for that party." *Yazzie v. Sullivent,* 561 F.2d 183 (10th Cir.1977). While a scintilla of evidence is insufficient to submit the case to the jury, *Symons v. Mueller Co.,* 493 F.2d 972 (10th Cir.1974), the trial court cannot deprive the non-moving party of a jury determination unless it is certain that the evidence "conclusively favors one party such that reasonable men could not arrive at a contrary verdict." *Western Plains Service Corp. v. Ponderosa Development Corp.,* 769 F.2d 654, 656 (10th Cir.1985). This standard must be rigorously applied in Title V cases.

---

**1.** As an internal applicant for the position, OU's Affirmative Action Office would initially screen Clark's application following published guidelines.

**2.** Although secret ballots had not been used in the past, Mankin explained that the vote was conducted in that way because Clark was a member of the section.

Our review of the record, guided by these concerns, mandates the conclusion that, in granting j.n.o.v., the district court reweighed the evidence and factored in its view of the credibility of the witnesses. While much of the evidence was circumstantial, all of the evidence and any inferences logically flowing therefrom must be examined to determine whether the jury's verdict was a reasonable conclusion and not an irrational speculation. Although the evidence is far from conclusive, we believe it is sufficient to support the jury's verdict.

## II. *Age Discrimination*

 We, too, have organized the record within the order of proof set forth in *McDonnell Douglas, supra,* and *Burdine, supra.* The stipulation to the prima facie case of age discrimination "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978) (cited in *Burdine*). With the stipulation, the burden of going forward shifted to the employer to rebut the presumption of discrimination by producing evidence that the employer's choice was motivated by a legitimate, non-discriminatory reason. If, by admissible evidence, the employer's explanation raises a genuine issue of fact that is legally sufficient to permit judgment in its favor, the burden of proof returns to the plaintiff. "[T]he factual inquiry proceeds to a new level of specificity." *Burdine* at 256, 101 S.Ct. at 1095. At that point, the plaintiff must demonstrate that the proffered reason is not the true reason and that a discriminatory purpose actually motivated the employer. The *Burdine* court explained that the plaintiff's proof at this stage may be either direct, by persuading the court that a discriminatory reason more likely motivated the employer, or indirect, by showing that the employer's proffered explanation is unworthy of credence. *Burdine* at 257 (citation omitted). This sequence of proof can be distilled into the question: Has the plaintiff produced sufficient evidence to

permit a reasonable fact finder to conclude that age was a determining factor (not the single factor necessarily, but that age made the difference) in the employer's decision? *EEOC v. Prudential Federal Savings & Loan,* 763 F.2d 1166, 1171 (10th Cir.1985); *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 83 (2nd Cir.1983). Where there is evidence of both a discriminatory reason and a legitimate reason, the fact finder must decide whether the promotion would have been granted but for the plaintiff's age. *Hagelthorn* at 83.

OU. offered evidence that enhancing the productivity of the section and injecting positive management skills were paramount factors in its search for a new section chief. Mankin testified there was general concern that the cartography section was not performing at a satisfactory level; that the performance of the section needed to be evaluated; and that new leadership was necessary to implement these goals. On cross-examination, however, Mankin admitted he had no way of knowing the productivity of the section, and he had no quantitative measure to demonstrate the fact. Eloise Dee Reynolds, appointed by the office of the provost to investigate Clark's grievance, testified that her committee found that management freely admitted that there was no method of measuring productivity prior to the selection of a new chief. Davis, the former section chief, testified that Mankin had never talked to him about productivity. To the contrary, the minutes of a cartography unit meeting held the year before Davis stepped down included Mankin's commendation of the section for the quantity and quality of its work.

Several other witnesses testified that in their perception no one in the section was responsible for a work bottleneck. Section members recalled that deadlines were rarely met, but on-going assignments would be routinely interrupted to work on projects that, they were told, had a higher priority.

In his deposition read at trial, Salman Bloch stated that Mankin told the search

committee that productivity was low and only two of the candidates could turn that around. However, Bloch's testimony relating to *Mankin's* leadership of the Survey also echoes that of other witnesses. He characterized Mankin as a "nice guy" but "lousy manager." Bloch stated, "[H]e sees, I think, management as a big ego trip."

Each candidate was asked to estimate a particular project to demonstrate his or her managerial ability. While Clark's estimate was higher than the estimates given by Furr or Dillon, committee members testified that Furr's figure was unrealistic.[3] Mary Ellen Kanak, who later resigned from her position as a cartographer at the section, participated in the search committee meetings and testified that when she tried to explain Clark's higher figure, Mankin became angry with her.

OU's explanation for the need for strong supervisory and management skills was also disputed. Although Clark had no specific management credentials, it was widely perceived that when Davis was away from the section, Clark was responsible for supervisory duties. Additionally, several witnesses and letters of recommendation noted Clark's teaching ability and special influence with students who rotated through the section.[4] By contrast, Furr's supervisory experience was limited to one occasion when, as chief and the only member of the base map division at the United States Geological Survey (USGS), he supervised temporary personnel assigned to him for short periods of time. The job description for his position at the USGS specified no supervisory responsibilities.

As further evidence of pretext, the EEOC showed that since Furr's selection as chief of the section, more projects had been contracted out than during any previous time. While Clark was later downgraded for overhead hours related to

course work at OU, Furr, upon arriving at OU, enrolled in classes which kept him away from the section at times during the week.

The evidence buttressing OU's proffer of a legitimate explanation for its promotion decision must also be judged in the context of the hiring process itself. Despite an internal promotion policy promulgated by the Affirmative Action Office at OU, Clark, the only member of the section to apply who met the minimum qualifications required for an internal promotion, was passed over. While OU conceded that its published staffing plan was not followed in this instance, it believed that no disparate impact befell any candidate because of this oversight. More notably, of the three final candidates for the position, only Furr and Dillon were asked what salary offer would be necessary to recruit them, despite the published salary. Clark was not asked if the advertised salary was acceptable. Presumably, then, Clark would have qualified for the position, since she satisfied the published job description, while Furr and Dillon required a higher salary. When Furr was selected, Mankin sought the salary increase necessary to meet Furr's request. Again, this circumstantial evidence gives rise to the inference that other factors were considered in the employer's decision.

While all of the evidence was disputed, and while no direct proof of age discrimination was produced, taken as a whole the evidence cumulatively supports the reasonable inference of discrimination. In any event, the evidence had reached that "new level of specificity" requiring the court to submit the issue of motivation to the fact finder. The EEOC did not need to prove that the reasons offered were false, but that they were not OU's only reasons, and that age made a difference. *Hagel-*

---

**3.** Clark explained that her higher figure included interruptions and delays, although she offered another estimate without these factors.

**4.** Dr. James Goodman, chairman of the geography department at OU, commented on her abili-

ties as a supervisor. "[H]er interest in teaching ... and her rapport with my students would lead me to believe that she should have no difficulties here." Vol. XI, pp. 212–13.

*thorn, supra,* at 82. As we stated in *Prudential,* "Although this evidence was not undisputed, it obviously was accepted by the jury and clearly is sufficient to allow a reasonable factfinder to decide that age was a determinative factor in [the] discharge." *Prudential,* 763 F.2d at 1171. The trial court erred in substituting its perception of the evidence for that of the jury.

## III. *Retaliation*

■ In its cross appeal, OU contends that prejudice and improper conduct fostered the jury's verdict on retaliation. OU complains that the repeated references to sex discrimination, despite the court's warnings, confused the jury and so tainted its view of the evidence that an impartial verdict could not be reached. Our review of the record uncovers no such taint. While the examining attorneys for the EEOC occasionally referred to the "male candidate," the court was swift to admonish counsel and advise the jury. Our reading of the evidence that the parties produced on the issue of retaliation is undisturbed by OU's argument, and we find no merit in its contention. The jury's verdict is supported by substantial evidence.

## IV. *Conclusion*

The judgment is reversed as to the granting of judgment notwithstanding the verdict on the claim of age discrimination, and the case is remanded to the trial court for reinstatement of the verdict, a determination of the award of damages, and the taxing of costs and attorneys' fees in the light of this opinion. The judgment on retaliation is affirmed.

SETH, Circuit Judge, concurring.

I agree that the judgment n.o.v. herein granted by the trial court must be set aside. However, I must add some comments as to the treatment of the order of proof aspect of the trial.

In my view, when a case such as this reaches us on a judgment n.o.v. ruling, or generally after a trial, the order of proof for trial suggested in *Burdine* and *McDonnell Douglas* has lost its significance. The desired proof was here submitted by the parties and the trial was completed. The appeal then comes to us as it does in all cases. The fact that it is an age discrimination case should make no difference. There is a typical order of proof applicable to all cases, and it is no more than that—a sequence for the submission of proof at trial for an orderly and understandable presentation as provided in the rules and by practice. It is to be controlled by the trial judge within the scope of his discretion. The basic requirement to be met is to permit a full and fair presentation of the evidence, this we held in *Nulf v. International Paper Co.,* 656 F.2d 553 (10th Cir.).

The Supreme Court says it has not formulated a rigid order of proof in discrimination cases. A ritual has not been so created. The Court in *U.S. Postal Service Board v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1481, of this said:

"The prima facie case method established in *McDonnell Douglas [Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668] was 'never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.' *Furnco [Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957], at 577 [98 S.Ct. at 2949]."

The ultimate question of discrimination was here reached, and at the end of this trial the order of proof there followed had fulfilled its purpose in the presentation of evidence. The parties had a fair and full opportunity to put on their cases and on this appeal the order of proof need not concern us. The application of standards for judgments n.o.v. generally should be applied. There is no basis for a different

application of such doctrines to Title VII cases.

This, in my view, is what the Supreme Court is saying in *U.S. Postal Service Board v. Aikens*, 460 U.S. 711, 713–14, 103 S.Ct. 1478, 1481:

> "Because this case was fully tried on the merits, it is surprising to find the parties and the Court of Appeals still addressing the question whether Aikens made out a prima facie case. We think that by framing the issue in these terms, they have unnecessarily evaded the ultimate question of discrimination *vel non*."

We have considered the order of proof in Title VII cases as related to Federal Rule of Civil Procedure 41(b) in several opinions. We have decided that it is necessarily a flexible matter for the determination of the trial court. *See Nulf v. International Paper Co.*, 656 F.2d 553 (10th Cir.), and *Kentroti v. Frontier Airlines, Inc.*, 585 F.2d 967 (10th Cir.). The Rule 41(b) motions are often the most direct challenge to the order of proof.

In *E.E.O.C. v. Samsonite Corp.*, 723 F.2d 748 (10th Cir.), we quoted at some length from *U.S. Postal Service Board v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, and discussed this point. Consideration should again be given to the following quotation from *Aikens* relating to both trial and appellate courts. After mention of the difficulties presented by the ultimate fact question, the Court there said:

> "But none of this means that trial courts or reviewing courts should treat discrimination differently from other ultimate questions of fact. Nor should they make their inquiry even more difficult by applying legal rules which were devised to govern 'the basic allocation of burdens and order of presentation of proof,' [*Texas Dept. of Community Affairs v.*] *Burdine*, 450 U.S. [248], at 252 [101 S.Ct. at 1093], in deciding this ultimate question."

With these comments as to ritual I concur in the conclusion that this case must be reversed because the general standards for judgments n.o.v. were not applied.