EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION,
Plaintiff–Appellee/Cross–Appellant,

v.

SPERRY CORPORATION,
Defendant–Appellant/Cross–Appellee.

Nos. 86–1869, 86–1917.

United States Court of Appeals,
Tenth Circuit.

July 18, 1988.

Donna J. Brusoski, Atty. (Johnny J. Butler, Acting Gen. Counsel, Gwendolyn Young Reams, Acting Associate Gen. Counsel, and Mark S. Flynn, Acting Asst. Atty. Gen., with her on the briefs), E.E.O.C., Washington, D.C., for plaintiff-appellee/cross-appellant.

Chris Wangsgard (Patrick J. O'Hara, with him on the briefs), Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for defendant-appellant/cross-appellee.

Before LOGAN and SETH, Circuit Judges, and BOHANON, District Judge.*

---

* Honorable Luther L. Bohanon, Senior United States District Judge for the Western District of Oklahoma, sitting by designation.

1. When Koyen took her leave, she signed a personnel form which stated, "The Company will make every reasonable effort to hold open the position from which leave is taken. How-

LOGAN, Circuit Judge.

In this age discrimination case, the Equal Employment Opportunity Commission (EEOC) alleges that defendant Sperry Corporation (Sperry) improperly discharged and then failed to rehire Elizabeth Koyen, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*

After a jury found for EEOC and Koyen at trial, both parties appealed. Because all other issues depend on an initial finding of liability, we need address only one issue here: Whether the district court improperly denied Sperry's motions for a directed verdict and judgment n.o.v.

Elizabeth Koyen, a clerical worker for Sperry in Salt Lake City, then 54 years of age, took a leave of absence from January 8, 1979, until June 8, 1979, to permit her to move to Hawaii to consider a marriage proposal. Shortly before the end of her leave, she tried to get her old job back at Sperry. When told that the position had been filled, she applied for other openings at Sperry without success.[1] In suing Sperry on Koyen's behalf, EEOC argues that the facts support four separate theories of age discrimination. Because the case turns on whether the evidence supports the jury's finding of intentional discrimination, we set forth each of these theories in some detail and weigh every reasonable inference from the facts in evidence in favor of EEOC. We conclude that EEOC did not present sufficient evidence to prove discrimination on any of these theories.

I

In reviewing an appeal from a denial of a motion for judgment n.o.v., we uphold the district court "unless the evidence points but one way and is susceptible to no reasonable inferences which may sustain the position of the party against whom

---

ever, if circumstances change to make that unreasonable, the position will be filled." The form further noted that if the employee's former position is filled, Sperry would "attempt to place the returning employee, based on qualifications and length of service." EEOC Ex. 21–d.

the motion is made." *Symons v. Mueller Co.*, 493 F.2d 972, 976 (10th Cir.1974). The nonmovant's position, however, must be supported by more than a scintilla of evidence, *id.;* there must be evidence upon which the jury could properly find a verdict for the nonmovant. *Hurd v. American Hoist & Derrick Co.*, 734 F.2d 495, 499 (10th Cir.1984). Such evidence is lacking in this case.

■ Under the ADEA, plaintiff must prove that age was a determining factor in defendant's treatment of the complaining employee. *Perrell v. FinanceAmerica Corp.*, 726 F.2d 654, 656 (10th Cir.1984). Plaintiff need not prove that age was the *sole* reason for the employer's acts, but must show that age "made the difference" in the employer's decision. *EEOC v. Prudential Federal Savings & Loan Ass'n*, 763 F.2d 1166, 1170 (10th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed. 2d 289 (1985).

■ Courts regularly adapt the framework developed in the Title VII cases, *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981), to individual disparate treatment claims under ADEA. *See EEOC v. University of Oklahoma*, 774 F.2d 999, 1002 (10th Cir.1985), *cert. denied*, 475 U.S. 1120, 106 S.Ct. 1637, 90 L.Ed.2d 183 (1986). As so adapted, a plaintiff establishes a prima facie case by showing that (1) the affected employee was within the protected age group; (2) she was doing satisfactory work; (3) she was discharged despite the adequacy of this work; and (4) a younger person replaced her. *Cockrell v. Boise Cascade Co.*, 781 F.2d 173, 177 (10th Cir.1986). The burden of production then shifts to defendant to show that a legitimate, nondiscriminatory reason motivated the decision. *Id.* Finally, plaintiff must rebut the employer's showing by demonstrating that the proffered justification is a pretext. *Id.* When both parties have presented their evidence, the central question becomes whether plaintiff has presented enough evidence to permit a reasonable factfinder to conclude that age was a determinative factor in the employer's decision. *Prudential Federal Savings & Loan*, 763 F.2d at 1171. It is to this question which we now turn.

### A

■ EEOC's first theory alleges that Sperry promised to return Koyen to her former job, if still open at the end of her leave, and that Sperry breached this promise. More specifically, EEOC claims that Koyen's former position was vacant when she called Sperry to indicate that she wished to return to Sperry at the end of her leave. Sperry disagrees. Koyen worked for Sperry in Salt Lake City from January 1962 until January 1979, when she took her leave. After being on leave for over a month, Koyen returned to Salt Lake City in February 1979, where she had lunch with her former supervisor, Rita Morgan, and other coworkers. During the course of this lunch, Koyen remarked that she was seriously considering returning to work at Sperry, V R. 164; VII R. 439–42, but did not state that she would definitely return. Koyen did not express a definite intent to return to Sperry until May 25, 1979, when she notified Morgan that she would return when her leave expired. VII R. 444–46, 500.

EEOC argues that Sperry scrambled to fill Koyen's position *after* learning on May 25 that she would return, and that this scrambling occurred *in response* to Koyen's May 25 phone call. The only evidence of this is the testimony of Joyce Shadrick, the woman who had temporarily filled Koyen's position when Koyen commenced her leave. Shadrick recollected that she gave notice on May 25 of her resignation from Sperry and left that very same day. V R. 165, 168. The crux of EEOC's argument is that Shadrick's testimony would allow a reasonable jury to find that Koyen's old position was vacant when she telephoned Morgan on May 25, 1979, and that Morgan shuffled employees in her unit to make the position appear filled.

The record, however, does not reasonably support this inference. The entire evidence clearly shows that Sperry had known of Shadrick's impending departure for "a couple of months" before May 25, V R. 166–67, and that Morgan *on May 23* prepared personnel documents in response to Shadrick's resignation. VIII R. 642–43, Ex. 57–b. Evidence also shows that Sperry decided to transfer another worker, Donna Hansen, into Koyen's job, V R. 81–82, 116, 120–21, and interviewed and hired a replacement for Hansen, Kathleen Ives, on May 24. VIII R. 642–46; V R. 159.[2] Finally, Koyen herself testified that Morgan told her during the May 25 phone call, "I wish you had called me yesterday because I just promised your job to someone else." VII R. 446 (*see also* testimony of Morgan, V R. 121).

In sum, the evidence overwhelms EEOC's case on this theory. The only conflict is between Shadrick's recollection of her resignation date and Sperry's memorialization, in unchallenged personnel records, of the actual resignation date. Contemporaneous documentation is more reliable than a witness' memory of an event which occurred years earlier; and Sperry's other evidence as well as Koyen's own testimony support the personnel records. The jury could not rationally infer from the evidence that Koyen's old job was open and unfilled on May 25, the date of her call; the only rational inference is that all personnel decisions concerning Koyen's old position had been made before May 25.

We also reject EEOC's claim that Sperry "knew," on the basis of the February 1979 luncheon, that Koyen would return at the end of her leave. The record is clear that Koyen stated only that she was "seriously considering" going back to Sperry, not that she had made up her mind to return. V R. 164; VII R. 439–42. Further, EEOC's allegation, even if true, does not state a valid

claim under the ADEA. If Sperry knew of Koyen's impending return, her only potential claim would be under state law for breach of contract.[3] To state an ADEA claim, EEOC must show that Sperry honored its contracts only with younger workers or showed some discriminatory animus against older employees.

B

■ EEOC's second theory of discrimination asserts that even if Koyen's former position was no longer vacant on May 25, the jury could infer intent to discriminate from the operation of Sperry's personnel policies, particularly its Internal Placement System (IPS). Under the IPS Sperry gives the first opportunity to apply for certain open positions to those workers already at Sperry. The IPS rules state, however, that an employee returning from a leave whose former position is taken cannot compete for that job through the IPS. The operation of the IPS, together with Koyen's inability to compete through it, made it very unlikely that she could regain her old position. V R. 216–18.

EEOC concedes that the IPS limited the positions available to employees returning from leaves, and that it did so in a way which, by its terms, did not discriminate against older applicants. EEOC argues, however, that the IPS was "not the true reason for Sperry's decision not to rehire Ms. Koyen, but rather a pretext for discrimination." Answer–Opening Brief of EEOC at 19. This pretext argument, however, wholly lacks support. EEOC presented no evidence of how Sperry manipulated the IPS so that it would operate differently in Koyen's case than for other individuals; and no other evidence suggested that Sperry in other instances either used or bypassed the IPS to favor younger employees.

---

**2.** While EEOC argues that Ives was not "hired" until June 11, Answer–Opening Brief of EEOC at 15, the record shows that she was hired on May 24 but did not actually start work at Sperry until June 11. V R. 82. EEOC mischaracterizes the June 11 commencement of work as a "hiring," although this clearly was not the case.

**3.** EEOC argued that Sperry orally promised Koyen she could get her old job back. VII R. 429–30, 483–84, 495. *Cf.* Sperry Ex. 21–d.

■ In attacking Sperry's personnel policies, EEOC also criticizes the "advisals" that Koyen received from Sperry about those policies. EEOC claims that these advisals—particularly concerning the operation of the IPS—were inadequate, and that this evidence supports Koyen's age discrimination claim. For example, EEOC noted the absence of information concerning the IPS on Koyen's leave form, as well as Sperry's failure to advise Koyen how to reapply following her leave, so that she would not have limited her application to her former position.

Nowhere, however, does EEOC show that Sperry gave better advisals to other employees, younger or older, who also took leaves. The evidence in fact shows the contrary. Two younger employees who also took leaves, Laumua Aiono and Jessie Olsen, testified that Sperry gave them no information about the terms and conditions of their personal leaves beyond the leave of absence form. VI R. 354–55; VIII R. 655. Similarly, Koyen testified that her advisals lacked any information about Sperry's IPS. VII R. 431–32, 434.

■ EEOC's argument boils down to two contentions: (1) that Sperry generally gave unfair advisals; and (2) that she deserved special treatment in the form of more complete advisals. We reject EEOC's position. First, the ADEA does not protect against generally unfair business policies, however objectionable; the act proscribes only discriminatory practices. *Elliott v. Group Medical & Surgical Service*, 714 F.2d 556, 567 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984). Since Koyen did not show her advisals were different from younger employees, those advisals do not show discrimination. *See Barber v. American Airlines, Inc.*, 791 F.2d 658, 661 (8th Cir.) (favoritism toward younger employees lacking; hence no inference of age discrimination), *cert. denied*, 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986).

■ Second, the ADEA does not require special treatment for older workers, which EEOC implicitly demands for Koyen. In *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210 (7th Cir.1985), the plaintiff argued that his employer had an affirmative duty to retain him by creating a new job or bumping another employee. The court squarely rejected this claim to special treatment. It held, " '[T]he ADEA mandates that an employer reach employment decisions without regard to age, but it does not place an affirmative duty upon an employer to accord special treatment to members of the protected age group.' " *Id.* at 1217 (quoting *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir.1981), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982)); *see also Parcinski v. Outlet Co.*, 673 F.2d 34, 37 (2d Cir.1982) ("[t]he ADEA does not require an employer to accord special treatment to employees over forty years of age."), *cert. denied*, 459 U.S. 1103, 103 S.Ct. 725, 74 L.Ed.2d 950 (1983).

■ EEOC and Koyen make another argument that amounts to a claim that Koyen deserved special treatment because of her age. EEOC argues that Koyen should have had the right to "bump" her replacement and recover her old job, despite the fact that Sperry did not allow such bumping. V R. 142; VI R. 326–27. Again, however, EEOC does not assert or even suggest that Sperry permitted younger employees to use bumping privileges. We reject as well this claim for special treatment.

**C**

■ EEOC bases its third theory of discrimination on allegations that Sperry treated younger employees more favorably than Koyen. At trial EEOC presented evidence comparing Sperry's treatment of Koyen with its actions toward younger employees who also returned to Sperry after leaves. By this evidence, EEOC hoped to show that Sperry treated younger similarly situated workers better than Koyen, thereby demonstrating discriminatory intent. We conclude that this comparative evidence does not support the inference EEOC advocates.

EEOC first compared Laumua Aiono with Koyen. Aiono, who was twenty-eight or twenty-nine years old, took a maternity leave in September 1978, which she extended to June 4, 1979, as a personal leave of absence. EEOC Ex. 56. When her leave expired, she received a letter of termination from Sperry, which was identical to Koyen's letter. *Id.* When Aiono sought a position at Sperry several weeks later, she was offered a position at her former level, but not on the shift she wanted. VI R. 342. Aiono declined this offer.

This comparison fails to demonstrate discriminatory intent for two reasons. First, while Sperry offered Aiono a position "of comparable pay and grade," VI R. 342, but offered Koyen a position of a lower grade than her former job, the reason for this apparent dichotomy is not only clear but also valid. Once Koyen's and Aiono's leaves of absence expired, Sperry's IPS all but insured that Sperry would offer them only low-level positions. V R. 216–17. Aiono had not advanced above such low-level jobs, so the position offered was similar to her last position; Koyen had increased in rank, so the low-level position which Sperry offered was below Koyen's last position. That Aiono could have returned to her former job does not reflect favorable treatment; it only reflects an internal placement policy that places all terminated employees in low-level jobs.

█ Second, EEOC points out that the termination letters Sperry sent Aiono and Koyen refer to prior job applications, when only Koyen had so applied. EEOC Ex. 56; VI R. 356. These letters do not show that Sperry terminated or dealt with Aiono on more favorable terms than Koyen; rather, they only reflect administrative carelessness on Sperry's part. Both women were terminated at the end of their leaves, and both subsequently were offered similar low-level jobs. The fact that the termination letters were identical, when their situations were not, does not allow an inference of intent to discriminate.

█ The second comparison EEOC presented was between Koyen and Jessie Olsen. Olsen was fifty-two years old when she took a leave of absence to go to Hawaii. X R. 962; VIII R. 651–52. Olsen was reinstated in her former position after a two-month leave of absence. VIII R. 652–53.

Olsen's treatment by Sperry does not raise a reasonable inference of age discrimination against Koyen for two reasons. First, although Olson was younger than Koyen, the difference between her age and Koyen's was slight—two years—and thus provides no substantial inference of age discrimination. *See Douglas v. Anderson,* 656 F.2d 528, 533 (9th Cir.1981) (discussing elements of prima facie case: "If the replacement is only slightly younger than the plaintiff, then it is less likely that an inference of discrimination can be drawn."); *cf. Maxfield v. Sinclair International,* 766 F.2d 788, 792 (3d Cir.1985) (substantial difference in age provides stronger inference of age discrimination), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986).

In addition, that Olsen took only a two-month leave, whereas Koyen's leave was for five months, renders Olsen's situation materially different from Koyen's. Sperry presented unchallenged evidence that Koyen was told that if she took only a two-month leave, she would be guaranteed her former position at Sperry, but that no such guaranty attended a longer leave. V R. 211. Because Olsen's leave was substantially shorter, the fact that she returned to her former job does not demonstrate intent by Sperry to discriminate against Koyen.

█ The final comparison EEOC presented was between Koyen, whose leave Sperry did not extend, and other employees, whose leaves Sperry extended. Sperry did not agree to Koyen's request to extend her leave in order to obtain certain retirement benefits. Sperry had extended leaves for other, younger employees, V. R. 197, 226, 253–54, 372, including extensions when the employee's leave had already expired, VI R. 229, and extensions to keep retirement or other benefits, VI R. 253–54.

This comparison is perhaps the strongest evidence in favor of Koyen. But we be-

lieve it does not justify the jury's verdict. It does not show disparate treatment because Koyen was not similarly situated to the comparison employees. Before the expiration of her leave Koyen appeared at Sperry, where she was offered and declined a job. VI R. 326, 360; VII R. 450. By declining this offer, Koyen placed herself in the status of "terminated" employee. It was in this status that she sought to extend her leave. In contrast, none of the comparison employees had declined offers, thereby terminating their jobs, before they had sought to extend their leaves. VI R. 253–54; VIII R. 640. Reading the record we have the strong feeling that James Martin, manager of employment at the Sperry plant, might have been able to give Koyen an extension of her leave to protect her employee benefits had he not been piqued at her adamant insistence on having her former position back. But the personal animosity that developed between Martin and Koyen does not itself support an inference of discrimination on the basis of age. Because EEOC offered no comparative evidence involving a younger employee who had been terminated by rejecting a job offer at the end of her leave, EEOC's evidence concerning extensions of leaves to retain employee benefits does not support an inference of intentional discrimination.

### D

EEOC bases its final theory on the argument that Sperry saved money by not rehiring Koyen and that these savings support an inference of disparate treatment. This claim has two facets, which we treat separately. The first relates to Koyen's retirement benefits. EEOC argues that by failing to extend Koyen's leave, Sperry adversely affected Koyen's retirement benefits. The record, however, shows no such adverse effect.

The evidence is clear, and EEOC stipulated,[4] that Koyen had received all of the pension benefits to which she was then entitled. While Koyen would have pre-ferred payment over time, VIII R. 574, rather than in the lump sum which she actually received for a part of her benefits, VII R. 454; VIII R. 578–79, Koyen received all she was due. EEOC essentially contends that Koyen would have received greater benefits, because she would have earned additional salary, including a greater contribution to her pension plan, had she remained at Sperry. This contention only states a truism; all continuing employees receive as much. EEOC's claim, therefore, does not support an inference of intent to discriminate.

The second facet of EEOC's "money savings" argument is that Koyen was the highest paid employee in her unit, that Sperry saved money by not retaining her and by hiring a lower-salaried replacement, and that this savings supports an intent to discriminate on the basis of age. V R. 99–110; X R. 905, 963. The record is clear that as a Clerk III, level 11 employee, she made $10,210 annually, V. R. 110, about $3,700 more than the woman who replaced her, V. R. 106, 108, and more than any other member of her unit. These facts standing alone, however, do not support EEOC's claim of disparate treatment.

While Koyen clearly had the highest salary of any employee in her unit at Sperry, the evidence at trial demonstrated salary was not a motivating factor in Koyen's case. Paul Sidelko, the acting department manager for Morgan in 1978–79, testified that manpower cost is "not something the department manager would worry about" and that "the way we work at Sperry, salary is almost a non-issue." VI R. 308–09. EEOC neither rebutted this testimony by showing that salary costs matter generally in personnel decisions at Koyen's level nor demonstrated that the cost of Koyen's salary specifically influenced Sperry's acts. In the absence of such evidence, we believe a jury could not reasonably infer that Koyen's higher salary motivated Sperry's decision not to rehire her and that such a motive sufficiently indicated an intent to

---

**4.** The parties stipulated at trial that "Mrs. Koyen has in fact been paid out or is in the process of being paid out all the benefits that had accrued in her Part A and Part B plans as of the date of her separation." VIII R. 602–03.

discriminate because of age. In the absence of such intent, the principal case which EEOC cites to support age discrimination, *Marshall v. Arlene Knitwear, Inc.*, 454 F.Supp. 715 (E.D.N.Y.1978), *rev'd in part without opinion*, 608 F.2d 1369 (2d Cir.1979), is clearly inapposite.

## II

Because we conclude that EEOC's theories of discrimination, taken either separately or together, are either paralogistic or unsupported by sufficient evidence, we find it unnecessary to address the other contentions of the parties. The judgment of the district court denying Sperry's motion for a judgment n.o.v. is REVERSED and REMANDED with instructions to dismiss the action.