Terrance P. TOWLE, Plaintiff,

v.

FLEXEL CORPORATION, Defendant.

No. 93–4167–SAC.

United States District Court,
D. Kansas.

Oct. 4, 1994.

Lee R. Barnett, Keith E. Renner, Barnett, Yockers & Renner, P.A., Wakarusa, KS, for plaintiff.

Stephen W. Cavanaugh, Fisher, Cavanaugh & Smith, P.A., Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

In this diversity of citizenship action, the plaintiff, Terrance P. Towle, claims that the defendant, the Flexel Corporation, breached an express or implied contract of employment when it actually or constructively terminated him without following the procedures for a hearing found in the Flexel employee procedure manual. Towle seeks compensatory damages in the amount of $68,-392.29, representing lost wages and lost 401(k) benefits.

This case comes before the court upon Flexel's motion for summary judgment. Flexel contends that there is no evidence to demonstrate the existence of an express or implied contract of employment. Flexel contends that even if Towle can demonstrate that an employment contract existed, it did not breach that contract. In this regard, it is Flexel's position that the plaintiff was not terminated, but instead, voluntarily retired.

The plaintiff responds, arguing that Flexel breached the express or implied contract of employment when he was actually or constructively discharged. Towle denies that he voluntarily retired, but instead that he preemptively retired prior to a scheduled disciplinary meeting to avoid the "inevitable termination" that was about to occur. Towle contends that a *de facto* termination occurred prior to his retirement and that his termination breached the terms of his contract of employment with Flexel. Towle contends that he has presented sufficient facts to demonstrate that summary judgment is not appropriate.

The court, having considered the briefs of counsel[1] and the applicable law, grants the defendant's motion for summary judgment.

## Standards for Summary Judgment

■ A court grants a motion for summary judgment if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law governing the suit dictates which facts are material or not. *Id.* at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir.1988).

■ The movant's burden under Rule 56 of the Federal Rules of Civil Procedure is to lay out the basis of its motion and to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). "A movant is not required to provide evidence negating an opponent's claim." *Committee for First Amendment v. Campbell*, 962 F.2d 1517, 1521 (10th Cir.1992) (citation omitted).

1. Flexel did not file a reply brief.

If the moving party meets its burden, then it becomes the nonmoving party's burden to show the existence of a genuine issue of material fact. *Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887, 891 (10th Cir.1991); *see Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993) ("If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case."). When the nonmoving party will have the burden of proof at trial, " 'Rule 56(e)' . . . [then] requires the nonmoving party to go beyond the pleadings and by her own affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Phillips v. Calhoun*, 956 F.2d 949, 951 (10th Cir.1992) (citations omitted); *see Martin*, 3 F.3d at 1414 (non-moving party cannot rest on the mere allegations in the pleadings); *see also Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 479 (1st Cir.1993) ("Optimistic conjecture, unbridled speculation, or hopeful surmise will not suffice."). The court views the evidence of record and draws inferences from it in the light most favorable to the nonmoving party. *Burnette v. Dow Chemical Co.*, 849 F.2d at 1273.

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion is not the chance for a court to act as the jury and determine witness credibility, weigh the evidence, or decide upon competing inferences.

*Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

### Uncontroverted Facts [2]

Flexel is a Georgia corporation which owns and operates a cellophane manufacturing plant at Tecumseh, Kansas. Towle began working at the Tecumseh cellophane plant on September 15, 1958, at which time the plant was owned and operated by E.I. Dupont. In 1986, Flexel acquired the Tecumseh plant and Towle continued his employment with Flexel, until August 26, 1992. In general, Towle apparently had an excellent performance record while working at the Tecumseh plant.

Towle was employed as a recycle operator for approximately twenty years and held that position on his last day of employment with Flexel. The recycle department receives waste cellophane from the other departments at the plant. In that department, the cellophane is shredded, reduced to smaller material and recycled.

In August 1992, Towle was working the 7 a.m. to 7 p.m. shift in the recycle department. On August 22, 1992, while working his normal shift, Towle removed a four by eight foot section of a wall from the building in which he was working. Towle, apparently believing that it was within the scope of his implied authority under Flexel's "honor system," took down the section of the wall without prior approval from any supervisory personnel. Towle removed the section of wall based upon his assessment that the area in which he worked was essentially inaccessible to firefighters and their equipment in the event that a fire were to occur in his work area. In Towle's opinion, removal of the wall improved the safety of his work area in the event emergency personnel and equipment were needed. Towle did not consult with anyone about his safety concerns prior to removing the wall. Towle took approximately eight hours to remove the wall.

**2.** In preparing the uncontroverted facts, the court has endeavored to summarize only those facts necessary to the court's decision.

There have been two fires in the recycle area, both of which occurred several years prior to the date in question. One fire occurred in a material bin which is located above the recycle area and the other was in a separator area which is also above the recycle area. No fires have occurred in the actual recycle area where Towle worked.

On August 23, 1992, Towle worked the 7 a.m. to 7 p.m. shift. Jim Oldham, the area supervisor, approached Towle and inquired as to why Towle had removed the wall section. Towle indicated that he removed the wall section to allow access for a fire hose. Oldham told Towle that he would mention this incident to management.

Towle was not scheduled to work until Tuesday evening, August 25, 1992, 7 p.m. On the morning of August 25, 1922, Towle was contacted by Rich Bertels who inquired about removal of the wall section. Bertels asked Towle to come to the plant for a meeting regarding the incident. Towle went to the plant and met with Bertels and Orville Ingling. At the meeting, Towle was again asked why he had removed the wall section. Towle responded that he removed the wall section to allow access for fire hoses. Towle suggested that a permanent door be installed where the wall section was removed to allow better access. At the conclusion of the meeting, Towle was advised to go home and call the plant in the morning, prior to noon, and he would be told what disciplinary action, if any, would be taken. Towle was also informed that his shift was covered the rest of the week. Towle was then accompanied to the front gate by Bertels and Ingling.

At that point, Towle was not told what type of discipline action, if any, would be taken. Towle was not told that he was going to be fired. Towle was only informed that Flexel was going to consider whether or not some form of discipline was appropriate. Based upon the fact that he had been escorted to the gate, Towle believed, however, that he was being terminated. At no point did any representative of the management of Flexel specifically tell Towle that he was fired.

According to Towle, on August 26, 1994, he called Bob Morris, a friend who was a member of management at Flexel, to inquire what action was going to be taken by the corporation regarding the dismantling of the wall. According to Towle's deposition, Morris said "[T]he decision is made. He says I can't get you out of this one. I says (sic) what should I do, and he told me I could still retire."

The deposition of Towle continues:

Q: Okay. It's your testimony that Bob Morris told you the decision had been made?

A: That's right.

Q: Did he tell you what the decision was?

A: No, not exactly. He didn't say they're going to fire you, but he said you can still retire.

Q: Did you ask him about retiring?

A: I didn't ask him. It was just he could still—(Pause)

Q: Okay. So going back to my first question, nobody who worked at Flexel told you that they were going to fire you?

A: It was my belief that they did.

Q: But nobody ever told you that they were going to terminate you?

A: No.

Deposition of Terrance P. Towle, at p. 43.

That morning, Towle proceeded to sign the forms necessary for him to retire from Flexel. Towle signed a document which included a request for actual retirement benefits. Towle then left Flexel.

On September 3, 1992, a vacation check for $940.17 was sent to Towle as payment for the remaining earned vacation. Towle cashed that check shortly thereafter. On September 29, 1992, Towle was sent a calculation of his retirement benefits effective August 26, 1992. That letter requested Towle to sign certain documents that were enclosed in order to initiate payments of his benefits. Towle never returned the retirement documents sent to him on September 29, 1992. On December 10, 1992, Towle was again requested to return the retirement documents sent to him. Towle has not responded to any of the letters.

Flexel subsequently replaced the section of the wall Towle had removed. It took a cou-

ple of mechanics a "few days" to repair the section of the wall removed by Towle.

Flexel utilizes a written three-step progressive disciplinary process at the plant. The disciplinary process provides that the first step is verbal contact with the employee regarding the problem. The second step provides that a written notice of the problem be given to the employee and placed in the employee's file. The third step is called the "problem case" which is used if acceptable performance is not obtained through the previous two steps, or for more serious infractions, or for repeat infractions. The disciplinary plan expressly provides that the first two steps do not have to be followed and that it is not necessary to take each or any of the three steps before discharging an employee.[3] In fact, the plan notes that some situations may be serious enough to merit immediate disciplinary action up to and including discharge. The disciplinary plan lists several types of conduct which will not be tolerated and which may be cause for discharge. One type of conduct that fell within that category was the theft or wilful abuse of company property. In Flexel's opinion, Towle's removal of the wall section constituted wilful abuse of company property.

Towle subsequently attempted to regain his position with Flexel. Flexel had already filled Towle's position and did not accept Towle's application for employment.

### Analysis [4]

As a precursor to recovery for breach of a contract of employment, the plaintiff must demonstrate that he was either actually or constructively terminated. Based upon the facts presented, Towle has failed to demonstrate that he was actually or constructively discharged.

■ Towle has not presented sufficient facts upon which a rational factfinder could conclude that he was actually terminated by Flexel when he was escorted to the front gate. While termination may have been a possible sanction to be imposed by Flexel, the evidence presented by the plaintiff merely demonstrates that termination was at most the likely event to occur. While the plaintiff is correct in his observation that there are no "magic words" required to prove that he was terminated by Flexel, the plaintiff's prognostication of events he believed likely to occur is simply insufficient to demonstrate that he was in fact terminated.

■ As for the plaintiff's constructive discharge claim, the plaintiff has not directed the court's attention to any case law directly supportive of his claim. The cases cited by both parties generally involve constructive discharge claims arising out of federal civil rights and discrimination statutes such as the ADEA or Title VII, *see, e.g., Vega,* 3 F.3d at 480–481; *Mitchell v. Mobil Oil Corp.,* 896 F.2d 463 (10th Cir.), *cert. denied,* 498 U.S. 898, 111 S.Ct. 252, 112 L.Ed.2d 210 (1990); *Irving v. Dubuque Packing Co.,* 689 F.2d 170 (10th Cir.1982). The determination of whether an employee is constructively discharged in such settings turns on the issue of " 'whether the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person would feel compelled to resign.' " *Mitchell,* 896 F.2d at 468 (quoting *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 344 (10th Cir.1986)). *See Cockrell v. Boise Cascade Corp.,* 781 F.2d 173, 177 (10th Cir.1986) (" '[A] constructive discharge occurs when an employer deliberately makes or allows the employee's working conditions to become so intolerable that the employee has no other choice but to quit.' ") (quoting *Irving,* 689 F.2d at 172). "The test is whether a reasonable man would view the working conditions as intolerable and would feel compelled to resign." *Cockrell,* 781 F.2d at 177; *see Clowes v. Allegheny Valley Hosp.,* 991 F.2d 1159, 1161 (3rd Cir. 1993) (" 'We employ an objective test in de-

---

**3.** It is Flexel's position that the three-step process was never utilized and no decision regarding discipline was ever made because Towle retired on August 26, 1992. Towle argues that the three step process was not utilized because the decision to terminate Flexel had already been made.

**4.** The briefs of the parties appear to drift into discussions of topics essentially irrelevant to this case. The court will not endeavor to address all of the arguments advanced by the parties, but instead, only consider those issues necessary to decide this case.

termining whether an employee is constructively discharged from employment: whether "the conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign." ' ") (quoting *Gray v. New York Newspapers, Inc.,* 957 F.2d 1070, 1079 (3d Cir.1992) (quoting *Goss v. Exxon Office Systems, Co.,* 747 F.2d 885, 887–88 (3d Cir. 1984)), *cert. denied,* —— U.S. ——, 114 S.Ct. 441, 126 L.Ed.2d 374 (1993)).

In its independent research of this issue, the court located only one case[5] discussing whether Kansas would recognize a cause of action for breach of an employment contract due to constructive discharge. In *Leopoldstadt, Inc. v. Kuti,* No. 91–2419–GTV, 1992 WL 396330, *5, 1992 U.S.Dist. LEXIS 20170, *17 (D.Kan. Dec. 22, 1992), the court concluded that "Kansas would recognize a cause of action for breach of an employment contract due to constructive discharge." The court concluded that genuine issues of material fact existed precluded summary judgment.

■ In the case at bar, assuming that Kansas would recognize a cause of action for breach of an employment contract due to constructive discharge, Towle has failed to present sufficient facts upon which a rational factfinder could conclude that he was constructively discharged. Viewed in the light most favorable to Towle, his decision to retire was not the product of an intolerable set of circumstances created by the defendant, but was instead the product of his own, albeit perhaps improvident, decision to retire. *See Long v. City of Kansas City,* No. 93–2073–EEO, 1994 U.S.Dist. LEXIS 9147 (D.Kan. June 30, 1994) (plaintiff does not demonstrate that he was subjected to intolerable working conditions). The plaintiff's apparent angst or concern associated with facing Flex-

el's management on August 26, 1994, or any decision they might render is not evidence to support a claim of constructive discharge. Nor does Towle's apparent unfounded concern that he might lose his retirement if he did not resign buttress his breach of contract claim.

■ The plaintiff has not demonstrated either factually or legally that he was constructively discharged. The ambiguous information provided to the plaintiff by his friend in management, Morris, was apparently not provided to the plaintiff at Flexel's request, but was provided to Towle upon his own inquiry. In any event, assuming that a contract of employment existed, there is essentially no evidence that Flexel breached that agreement. Any failure by Flexel to rigidly adhere to its disciplinary guidelines[6] was simply due to Towle's own actions.

In short, the plaintiff has not demonstrated that he was terminated, actually or constructively, by the defendant, and/or that the defendant breached any term of the alleged contract of employment. Based upon the facts and arguments presented, Flexel is entitled to summary judgment.

IT IS THEREFORE ORDERED that Flexel, Inc.'s motion for summary judgment (Dk. 24) is granted.

---

**5.** In *Hanke v. Phillipsburg Coop. Assn.,* No. 65,-917, 1992 Kan.App. LEXIS 53 (Kan.Ct.App. Feb. 14, 1992), an unpublished decision, the Kansas Court of Appeals appears to have assumed that Kansas would under certain circumstances recognize a cause of action for breach of an employment contract by constructive discharge. However, in that case, the Kansas Court of Appeals affirmed the district court's grant of directed verdict in favor of the defendant on that claim, agreeing that there was no evidence to demonstrate that the plaintiff was forced to retire in violation of an express contract of employment.

**6.** In this regard, the court simply notes that "under Kansas law, personnel rules which are not bargained for cannot alone be the basis for an express or implied contract of employment, since they are merely the unilateral expression of the employer's policy." *Copple v. City of Concordia, Kan.,* 814 F.Supp. 1529, 1536 (D.Kan.1993).